508 So.2d 1072 (1987)
William T. BURNHAM, Sr., William T. Burnham, Jr., and Rita Burnham Farmer
v.
Dr. W. Granville TABB, Sr.
No. 56643.
Supreme Court of Mississippi.
May 20, 1987.
Michael S. Allred, David A. Barfield, Satterfield & Allred, Jackson, for appellants.
Mildred M. Morris, Jimmie B. Reynolds, Jr., Whitman B. Johnson, III, Steen, Reynolds, Dalehite & Currie, Jackson, for appellee.
Before HAWKINS, PRATHER and GRIFFIN, JJ.
PRATHER, Justice for the Court:
This medical malpractice case was filed in the Circuit Court of the First Judicial District of Hinds County. The appellants, William T. Burnham, Sr., William T. Burnham, Jr. and Rita Burnham Farmer, heirs of Lynnie G. Burnham, deceased, sued the appellee, Dr. W. Granville Tabb, Sr., and Madison General Hospital, Dr. A.P. Durfey, and Dista Products Co., a Division of Eli Lilly and Co. Madison County Hospital was granted a summary judgment on the grounds of sovereign immunity. Before trial the plaintiffs voluntarily non-suited *1073 Dista Products and Dr. A.P. Durfey. At trial the parties entered into a stipulation that stated that by prescribing Nalfon to Mrs. Burnham, Dr. Tabb failed to exercise reasonable care, according to the applicable standards of care and skill ordinarily exercised by other doctors under the same or similar circumstances. The court then instructed the jury that the only remaining point to decide was the question of liability, if any, in this case, or the following issues:
(1) Whether or not Mrs. Burnham had an adverse reaction to the drug Nalfon prescribed by Dr. Tabb, and
(2) If she did, whether or not the effects of the drug contributed to or caused her death.
The jury returned a verdict in favor of Dr. Tabb. On appeal, the Burnhams contend:
The trial court erred in refusing to grant a peremptory instruction, a j.n.o.v., or a motion for a new trial.
This Court affirms the verdict in the lower court.

I.
Lynnie G. Burnham, a sixty-five year old white female, suffered from chronic allergies, hayfever and asthma.
In 1968, while at Mercy Hospital in Vicksburg for removal of the polyps in her nasal cavity, Mrs. Burnham was given a dose of aspirin for a headache and had an acute allergic reaction. Mr. Burnham testified that her reaction time to the aspirin was within five minutes, and that Mrs. Burnham began, within ten minutes, gasping for breath and turning blue. She was rushed to the emergency room for resuscitation and soon, fully recovered.
When undergoing a second polyp removal surgery at St. Dominic's Hospital, Burnham was again given either aspirin or penicillin and had an adverse reaction, but fully recovered in response to treatment.
Again in 1976, Mrs. Burnham had a reaction to aspirin in tablets of Percodan. Mrs. Burnham experienced swelling in her lips and eyelids and experienced a choking sensation. Again she immediately responded to treatment. Since the mid 1960's, Mrs. Burnham had a history of asthma attacks and such attacks occurred approximately every three weeks. Whenever Mrs. Burnham was treated medically, she would inform the responsible personnel that she was allergic to aspirin and penicillin and asked them to mark her chart so she would be treated accordingly.
In 1983, Lynnie Burnham was seen by Dr. Granville Tabb, ophthalmologist, for vision problems. He scheduled an extra capsular cataract surgery performed on March 11, 1983. Prior to surgery, Tabb noted Burnham's allergy to aspirin, penicillin and thermal blankets. The surgery was successful.
Mrs. Burnham saw Dr. Tabb for her first post-operative visit on March 17, 1983. No complications were noted. On March 24 Mrs. Burnham again saw Dr. Tabb. During this visit Dr. Tabb prescribed the drug Nalfon in a 600 milligram dose to Mrs. Burnham. Dr. Tabb claims that the Nalfon was prescribed to combat cystoid macula edema (swelling in the eye), while the Burnhams claim it was prescribed to treat arthritic pain in Burnham's knee joints.
After leaving Dr. Tabb's office, Mrs. Burnham and her husband traveled back to Canton, Mississippi and had the prescription for Nalfon filled. Mrs. Burnham then traveled to her home, had lunch and took one of the Nalfon tablets. Shortly after ingesting the Nalfon, Mrs. Burnham began having difficult breathing and was taken to the Madison General Hospital. At the hospital, no mention was made of the fact that Mrs. Burnham had taken Nalfon. The nurse in attendance first administered oxygen by mask to Mrs. Burnham. The nurse then called Dr. Durfey who instructed her to administer a shot of Susphirine. Shortly thereafter Mrs. Burnham went into respiratory arrest. CPR was administered and a tube was put down into her lungs. After Mrs. Burnham began to recover the tube was removed. But she again arrested, and the tube was again inserted to force air into Mrs. Burnham's lungs. She was transferred to St. Dominic's Hospital and put under the care of Dr. David O. Westbrook, *1074 a specialist in critical care medicine. There it was discovered that the oxygen tube inserted by Madison General was only supplying air to the right lung. Mrs. Burnham stayed in a coma for approximately one week and remained hospitalized for four weeks prior to her death on April 29, 1983. According to the death certificate, her cause of death was acute bacterial septicemia (blood disease), acute respiratory failure and renal (kidney) failure.

II.
As in all claims for negligence, in order to establish a prima facie case for medical malpractice, the following elements must be proven:
(1) The existence of a duty on the part of the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
(2) A failure to conform to such standard required of the defendant;
(3) The breach of such duty by the defendant was a proximate cause of the plaintiff's injury;
(4) Injury resulting to the plaintiff's person. W. Keeton, Prosser & Keeton on Torts, § 41 (5th. ed. 1984).
In this case, the defendant, Dr. Tabb, stipulated that by prescribing Nalfon to Mrs. Burnham, he failed to exercise reasonable care according to the applicable standards of care and skill ordinarily exercised by other doctors under the same or similar circumstances. Therefore, Dr. Tabb acknowledged the existence of the duty owed to Mrs. Burnham and a consequent breach of that duty. Yet Dr. Tabb denies that ingestion of the Nalfon caused an allergic reaction and denies that the Nalfon was in any way causally related to Mrs. Burnham's death. Thus the issue of causation is the crucial question in this appeal.
Proximate cause is an essential element in an action of negligence that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. W. Keeton, Prosser & Keeton on Torts, § 41 (5th ed. 1984).
On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough... .
Id. See also Tombigbee Electric Power v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953) (even where negligence is shown, that fact alone affords no basis for the recovery of damages unless it further appears from direct evidence or reasonable inference that such negligence proximately contributed to the damage).
Appellants challenged the verdict for Dr. Tabb and contend that the trial court erred in denying a peremptory instruction, the motion for a judgment notwithstanding the verdict and the motion for a new trial.
Jury instruction P-1 read as follows:
The court instructs you to find in favor of the plaintiff, William T. Burnham, Sr., William T. Burnham, Jr. and Rita Burnham Farmer, against the defendant, Dr. Granville Tabb, Jr., and that you are to determine damages pursuant to other instructions of the court.
The rule upon granting such an instruction, a peremptory one, is as follows:
Where such a request has been made, the trial court must consider all of the evidence  not just the evidence which supports the non-movant's case  in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the motion as required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of a partial *1075 judgment might reach different conclusions, the motion should be denied... .
Mississippi Farm Bureau Mutual Insurance Co. v. Todd, 492 So.2d 919, 927 (Miss. 1986); Weems v. American Security Insurance Co., 450 So.2d 431, 435 (Miss. 1984).
Before a motion for a j.n.o.v. has been made the trial court considers the evidence in the same fashion as when a motion is made for a peremptory instruction. If the facts and inferences point overwhelmingly in favor of the movant, granting the motion is required. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fair-minded men might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand. Jesco Inc. v. Whitehead, 451 So.2d 706 (Miss. 1984) (Robertson's concurring opinion). See also McIntosh v. Deas, 501 So.2d 367 (Miss. 1987); Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985); Stubblefield v. Jesco Inc., 464 So.2d 47 (Miss. 1984).
When a party makes a motion for a new trial, such motion should be granted only when the verdict is contrary to the substantial weight of the evidence. Baker Service Tools Inc. v. Buckley, 500 So.2d 970, 972 (Miss. 1986); Adams v. Greene, 474 So.2d 577 (Miss. 1985). The discretion vested in a trial judge with respect to a motion for a new trial is quite broad. This Court's authority to reverse is limited to those cases wherein the trial judge has abused his discretion. Davis v. Singing River Electric Power Association, 501 So.2d 1128, 1129 (Miss. 1987); Shelton v. Puckett, 483 So.2d 354 (Miss. 1986).
With these standards in mind, this Court reviews the evidence adduced at trial. The appellants introduced evidence that on March 24, 1983, Mrs. Burnham immediately after eating lunch, took a Nalfon tablet. According to the testimony of her husband, within three minutes after having swallowed the capsule, Mrs. Burnham began suffering from asthma like symptoms and was immediately taken to Madison General Hospital. Although Mr. Burnham testified that Mrs. Burnham's neck was swollen to a great degree at the time she arrived at the hospital, the testimony of the nurse in attendance at Madison General Hospital, refuting Mr. Burnham's testimony, stated that Mrs. Burnham's neck was not swollen when she admitted her to the emergency room. Mrs. Burnham was quickly given oxygen by mask and a physician was summoned. An order for Susphrine was given and that was immediately administered. As soon as the nurse turned around after injecting the Susphrine, Mrs. Burnham became cyanotic (turning blue from lack of oxygen) and soon quit breathing. Upon Dr. Durfey's arrival, he administered two additional drugs and began to intubate Mrs. Burnham. When Mrs. Burnham appeared to respond the tube was removed. After the tube was removed the symptoms of cyanosis reappeared and the tube was reinserted.
Mrs. Burnham was transferred to St. Dominic's Hospital and Dr. David Westbrook, an internist with a specialty in pulmonary medicine was consulted. X-rays taken upon Mrs. Burnham's arrival at the St. Dominic's Hospital indicated that the tube which had been inserted at Madison General was not in the proper place and was distributing air only into the right lung. Swelling of her neck was noted for the first time upon Mrs. Burnham's admission to St. Dominic's, after intubation, removal of the tube and retubation period. There was no report of swollen lips or eyelids.
Appellants contend that Mrs. Burnham was basically in good health but the record is replete with medical documentation that Mrs. Burnham suffered from repeated asthma attacks.
The appellants offered the testimony of Dr. Charles Michael Gruber designated by his employer Eli Lilly and Co. as the person knowledgeable of reactions and Pharmacology of Nalfon. Gruber testified that Nalfon is a non-steroidal, anti-inflammatory analgesic (pain killer), but that Lilly had performed no tests with Nalfon on aspirin sensitive patients. However, Gruber was familiar with European tests with other non-steroidal drugs which indicated that a *1076 reaction time of thirty minutes to two hours after ingestion of an anti-inflammatory medication. In testing normal patients to measure the level of Nalfon in the bloodstream, subjects displayed some level of Nalfon within a few minutes after ingestion of a dose where the patients fasted and were given medication with water to be sure it got into the stomach. Dr. Gruber did not say that a person would not have an allergic reaction within five minutes after ingestion of Nalfon. However, he could not state with probability that such a reaction would occur within that time. Gruber knew of no adverse reports where a physician had prescribed Nalfon to an aspirin allergic patient. He stated that the absence of any report could arise either from the fact that no case existed or that no case had been reported.
Appellants also called Dr. David Westbrook, specialist in critical care medicine, internal and pulmonary medicine, who was the treating physician from March 24, 1983 until the date of Mrs. Burnham's death. Upon arrival at St. Dominic's in Jackson, Westbrook noted the treatment afforded Mrs. Burnham at Madison General and recorded that the ambulance ride from Canton to Jackson was difficult due to problems with lost blood pressure and breathing. Upon her arrival at St. Dominic's, Mrs. Burnham did not respond to voice command. Her eyes were red and pupils reactive. Her neck was somewhat swollen but it could be moved. Pulmonary breath sounds were decreased in the left lung and her initial x-ray showed that the endotrachial tube was in her right lung only. It was pulled back to allow air flow to both lungs. It was Dr. Westbrook's opinion that Mrs. Burnham had an adverse reaction following her taking of Nalfon; his opinion was based on the fact that she had a previous sensitivity to aspirin and the fact that the PDR (Physician's Desk Reference)[1] indicates a high percentage for cross sensitivity between aspirin and Nalfon. Westbrook attributed Mrs. Burnham's hypoxic brain damage to her respiratory arrest of March 24, and stated that this condition, requiring intensive care support with invasion of her immune system from numerous catheters and tubes, led to infections in her bloodstream, and subsequently to her ultimate death.
Called as an adverse witness by the plaintiffs, defendant Dr. Granville Tabb, testified that he made the following note when Mrs. Burnham was admitted to St. Dominic's in Jackson:
From the apparent and subsequent course, the hypersensitivity to aspirin may have had the Nalfon trigger the respiratory attack leading to circulatory problems in this hypersensitivity person.
But on direct examination Dr. Tabb stated that after learning about her alleged reaction time and symptoms upon arrival at Madison General, it was his opinion that she had an asthma attack and did not react to Nalfon.
Dr. Charles R. McCollum, a specialist in internal medicine and gastrointerology, testified for the defendant that after review of all documents, hospital records and patient records of Mrs. Burnham, it was his opinion that Mrs. Burnham suffered from an asthma attack. His opinion was based on the time interval between ingestion of the Nalfon and the manifestation of the symptoms. McCollum testified that an acute asthma attack induced by allergic reaction is more easily treated than one caused by other factors and that at the time Mrs. Burnham would conceivably have experienced any major reaction to Nalfon, she was already being treated in the manner best suited to treat such a condition.
*1077 Appellants argue that in light of the testimony presented at trial, reasonable minds could not differ in the conclusion that the ingestion of Nalfon by Mrs. Burnham caused or contributed to the adverse reaction she experienced.
But this Court holds that the issue of proximate cause was properly submitted to the jury and that the admitted negligence of Dr. Tabb is, alone, insufficient to warrant recovery. Tombigbee Electric Power v. Gandy, supra. Numerous facts were presented from which the jury could have inferred that the Nalfon tablet neither precipitated the attack nor contributed to the severity of the attack. Therefore the trial court did not err in denying the peremptory instruction, the j.n.o.v. and the motion for a new trial.
It is the province of the jury to determine the weight and worth of testimony and credibility of the witnesses at trial. Mississippi State Highway Commission v. Robertson, 350 So.2d 1348 (Miss. 1977). And this Court must assume that the jury drew every permissible inference from all evidence offered in favor of Dr. Tabb. Phillips v. Dow Chemical Co., 247 Miss. 293, 151 So.2d 199 (1963); Williams v. Clark, 236 Miss. 423, 110 So.2d 365 (1959).
The jury's determination is rationally based upon evidence adduced at trial and should not be disturbed. This Court has carefully considered other assigned errors concerning jury instructions but finds no reversible error therein.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] The Physician's Desk Reference (a treatise on indications, contra-indications and dosages of drugs) contains the following:

Contra indications: Nalfon (fenoprofen calcium, dista) is contra indicated in patients who have shown hypersensitivity to it.
The drug should not be administered to patients with a history of significantly impaired renal function.
Nalfon should not be given to patients in whom aspirin and other non-steroidal anti-inflammatory drugs induce the symptoms of asthma, rhinitia or, urticaria, because cross sensitivities of these drugs occurs in a high proportion of such patients.
The word "contra indication" is one which means: "situations in which (the FDA suggests that) the drug should not be used."