# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 01-20672
_____


CHRISTINA B. HAARGAARD,

Plaintiff-Appellant,

VERSUS

HARRIS COUNTY, ET AL.,

Defendants,

GARRISON SHIELDS,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Texas
m H-99-CV-1076
_____
April 11, 2002



Before REAVLEY, SMITH, and DENNIS,          JERRY E. SMITH, Circuit Judge:[*]
Circuit Judges.

Garrison Shields drove one of the first cars to enter a multi-car pileup. Christina Haargaard, a passenger in one of the cars further down the chain, sued Shields and others for negligence. The district court granted summary judgment for Shields, because Haargaard had failed to create a fact question about whether Shields proximately caused her injuries. We affirm.

I.

Shields crested an overpass on a freeway. A parked police car and two wrecked cars blocked the two lefthand lanes, which Shields and two other oncoming cars occupied as they approached. Constable Linnard Crouch, an off-duty peace officer at the bottom of the hill, testified that the patrol car was parked ten yards from the bottom of the overpass, or almost two hundred yards from the top of the overpass. Shields either did not, or could not, take evasive action fast enough on the slick, wet pavement. On reaching the patrol car, he swung into the far lefthand lane and rear-ended a van parked in front of the accident scene. Another vehicle took evasive action by darting into the nearest right-hand lane.

Elizabeth Smith, driving behind Shields, noticed the police car only after Shields had swerved to the left. Smith testified that she did not have time to stop, and she could not escape in either direction. The stopped van and Shields blocked one of

those potential escape routes, and the vehicle that had swerved right blocked another. Smith hit the parked patrol car in the near lefthand lane.

Haargaard claims that Kamika Harvey's and Roslyn Ray's cars then slammed into Smith's. Shields avers that Harvey brought her vehicle to a complete stop one or two car lengths behind the stopped vehicles; Ray braked but was hit from behind. Angela Juneman's car, with Haargaard in the passenger's seat, next collided into Ray's car, causing Junemann to veer into the near right lane and collide with William West's vehicle. Jason Proctor then rear-ended Juneman's car, forcing one or both of these cars to hit Harvey's car.

II.

After limited discovery, Shields moved for partial summary judgment. The court granted the motion because Haargaard had not created a fact question about whether Shields had proximately caused Haargaard's injuries. The court certified judgment under FED. R. CIV. P. 54(b), allowing Haargaard an immediate appeal.

III.

Haargaard has never identified competent summary judgment evidence that Shields or Smith impaired the view of Harvey and the other following drivers. Nor has Haargaard pointed to any evidence the Shields and Smith blocked escape routes; both Shields and Smith crashed into stopped vehicles already occupying the two lefthand lanes. Harvey and the other following drivers had the

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

same opportunity to avoid the accident as did Shields and Smith, so Shields's accident was not the but-for cause of the subsequent wrecks.

### A.

The same standards for summary judgment bind both this court and the district court. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 301 (5th Cir. 1993). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmovant, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255.

Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), the nonmovant must come forward with "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Sec. & Exch.*

*Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

We hesitate to resolve negligence actions at summary judgment[1] because of state precedent defining the necessary summary judgment proof of proximate cause.[2] Texas courts usually consider proximate cause an issue for the jury. *Boyd v. Fuel Distrib., Inc.*, 795 S.W.2d 266, 272 (Tex. App.SSAustin 1990, writ denied). Texas courts, however, do resolve proximate cause at summary judgment if a reasonable jury could reach only one conclusion.[3]

### B.

In Texas, general proximate cause principles govern where a lead driver's negligence led to a multiple car wreck.[4]

---

[1] *Zimzores v. Veterans Admin.*, 778 F.2d 264, 267 (5th Cir. 1985) ("[I]t is extremely rare that the issue of negligence can be properly disposed of by summary judgment.")

[2] *Dickey v. Baptist Mem'l Hosp.*, 146 F.3d 262, 267 (5th Cir. 1998) (looking to Mississippi law to determine that "[a] mere possibility of causation is not enough" at summary judgment) (citation omitted) (internal quotation omitted).

[3] *Doe v. Boys Club, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (granting summary judgment in a negligence action because plaintiff failed to create fact question about proximate cause); *Boyd*, 972 S.W.2d at 272 ("[P]roximate cause may be established as a matter of law if circumstances are such that a reasonable mind could not arrive at a different conclusion.").

[4] *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, (continued...)

We can divide the proximate cause inquiry into two elements—cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). The plaintiff cannot create a fact question about cause in fact through "mere conjecture, guess, or speculation." *Doe*, 907 S.W.2d at 477 (citations omitted), but must prove that "an act or omission was a substantial factor in bringing about injury which would not otherwise have occurred," *Prudential Ins. Co. v. Phillips*, 896 S.W.2d 156, 164 (Tex. 1990) (citation omitted). The evidence must show that negligence was the not a remote cause and that its consequences were a natural and probable result. *Doe*, 907 S.W.2d at 477.

The Texas Supreme Court has refused to find proximate cause without evidence that the lead vehicle's accident was a "substantial factor" in the subsequent pile-up. In *Bell*, 434 S.W.2d at 122, the defendant rear-ended another vehicle, knocking his trailer over into a traffic lane; a drunk driver traveling in the same lane later struck the trailer. The court held that because the first accident had "run its course" and was "complete," the defendant did not proximately cause the second accident. *Id.* The court explained that the defendant's negligence and accident must be "an active and efficient cause of the injury." *Id.*

In the wake of *Bell*, several Texas courts of appeals have refused to find proximate cause in pileup accidents.[5] Other Texas courts have found that the first wreck proximately caused subsequent wrecks.[6] All of these courts re

___

[4](...continued)
471-72 (Tex. 1991) (referring to RESTATEMENT (SECOND) OF TORTS and general principles of Texas law); *Bell v. Campbell*, 434 S.W.2d 117, 121 (Tex. 1968) (basing decision on reasonable foreseeability); 8 TEX. JUR. 3D *Automobiles* § 550 (3d ed. 1994) ("Once a motor vehicle operator starts a chain of events by reason of his or her own negligence, the operator is ordinarily responsible, under the general rules of negligence, for all injuries or damage that are the proximate result of the operators unlawful conduct.").

[5] *Sallie v. Cook*, 403 S.W.2d 509, 511-12 (Tex. Civ. App.—Dallas 1966, no writ) (refusing to find that primary wreck caused secondary wreck because drivers in secondary wreck stopped short of colliding with cars involved in primary wreck); *Heavy Haulers v. Nicholson*, 277 S.W.2d 250, 254 (Tex. Civ. App.—Galveston 1955, writ ref'd n.r.e.) (finding that drivers in primary accident should not have anticipated secondary accident because they pulled the vehicles almost entirely off the road); *Firestone Tire & Rubber Co. v. Rhodes*, 256 S.W.2d 448, 452 (Tex. Civ. App.—Austin 1953, writ ref'd n.r.e.) (finding that when car rear-ended another driver, forcing that driver into the car in front, the driver of the middle car did not proximately cause any harm).

[6] *Longoria v. Graham*, 44 S.W.3d 671, 674 (Tex. Civ. App.—Houston [14th Dist.] 2001, n.w.h.) (reversing grant of summary judgment where defendant's "negligence created a boxed canyon effect that afforded only the highly dangerous escape of backing against traffic on an interstate."); *J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 664 (Tex. App.—Fort Worth 1999, pet. denied) (finding proximate cause when trucker missed exit before construction, hit barriers where construction left opening too narrow to pass through, and caused pileup); *Almaraz v. Burke*, 827 S.W.2d 80, 81-82 (Tex. App.—1992, writ
(continued...)

quire, on the facts of the particular case, that the first wreck in fact cause any subsequent accidents. So we will turn to the facts of this case, applying *Bell*.

## C.

The district court held that Haargaard had failed to create a fact question about whether Shields's delayed lane change was a cause in fact. The court emphasized that Harvey stopped short of the Shields/Smith accident; any subsequent crashes resulted from the previously blocked road, not from Shields's late braking and lane change.

---

[6](...continued)
denied) (holding that when van negligently sideswiped car and left car disabled on overpass, van driver proximately caused secondary wreck with disabled car); *Hennessy v. Estate of Perez*, 725 S.W.2d 507, 508 (Tex. App.SSHouston [1st Dist.] 1987, no writ) (finding fact question for jury where drunk driver overturned car and subsequent drunk drivers ran into the crash scene); *Tex. Highway Dep't v. Broussard*, 615 S.W.2d 326, 329 (Tex. Civ. App.SSFort Worth 1981, writ ref'd n.r.e.) (finding that following car too closely and rear-ending can proximately caused wreck between second car and car third car); *Westbrook v. Reed*, 531 S.W.2d 890, 891-92, 893 (Tex. Civ. App.SSAmarillo 1975, writ ref'd n.r.e.) (finding that negligently causing primary accident in sandstorm, when visibility was very poor, proximately caused secondary wreck by following vehicles); *Herring v. Garnett*, 463 S.W.2d 52, 54 (Tex. Civ. App.SSHouston [1st Dist.] 1971, writ ref'd n.r.e.) (finding that driving with defective tires creates liability not only for flat and primary accident but also for secondary accident); *Nash v. Roden*, 415 S.W.2d 251, 254–55 (Tex. Civ. App.SSAustin 1967, writ ref'd n.r.e.) (holding that when lead driver improperly applied brakes, spun out, and was struck from behind, lead driver was also responsible for secondary accident).

Because the van already blocked the same lane that Shields occupied, Shields did not cause the accident.

Haargaard argues that Shields's late evasive action blocked the sight of subsequent drivers and potential escape routes. Haargaard presents some evidence that Smith did not see the accident until she was upon it. Smith testified that Shields and another driver were in front of her; she crested the hill; and five seconds later each of the leading cars veered to one side.

Smith veered to the left, into the van stopped in front of the original accident. The other car veered to the right, through the open lanes of traffic and presumably to safety. Smith testified that she braked, but did not swerve, and drove straight into the patrol vehicle. Less than five seconds later, while still in the car, she heard but did not feel the second accident.

Haargaard's evidence creates a fact question about whether Shields caused Smith to crash but does not create a fact question about whether the Shields/Smith crash caused the subsequent accident. Smith testified that no other cars were within her sight when she crested the hill. Haargaard has not argued that either Shields or Smith blocked following drivers' line of sight.

Finally, the idea that Shields or Smith blocked escape lanes is untenableSSboth crashed into cars in occupied lanes. Harvey had the same opportunity to see and avoid the crash that Shields did: Each

could see the accident from the top of the crest, and each could have avoided it only by veering into the two right lanes.

For the first time on appeal,[7] Haargaard argues that Harvey actually hit Smith, which led to a pileup involving all the cars. Shields, however, presented overwhelming evidence that Harvey never hit Smith: (1) Smith testified that no one made contact with her car. (2) Haargaard's expert, Walter S. Reed, Ph.D., P.E., submitted an affidavit that describes the accident in great detail but does not include a collision between Harvey and Smith. (3) Harvey testified in a deposition that she came to a complete stop one or two car lengths behind the stalled car. (4) Crouch testified by affidavit that the Shields/Smith accident was separate from the Harvey/Juneman accident.

Haargaard argues that a single piece of evidence creates a fact issueSSOfficer John Miller's accident report. In the blank for Smith's "vehicle damage rating," Miller wrote "FD-4/RD-3." Haargaard interprets the "RD-3" as an assessment of the damage to the rear of Smith's vehicle and argues that it creates a fact question about whether Harvey rear-ended Smith. We disagree.

First, Haargaard's interpretation of the damage report is not entirely consistent with her theory of the accident. Assume that "FD" stands for "front damage" and "RD" stands for "rear damage." According to Haargaard's theory, Smith's car should have suffered rear damage and Harvey's car should have suffered front damage. But the damage assessments for Smith and Harvey's vehicles do not add up. The report does not use the symbol "FD" plainly to indicate front damage to Harvey's car.[8] Haargaard does not present any external evidence supporting her interpretation of the accident report, such as testimony by Miller. Extrapolating such a complicated theory from scant proof resembles speculation more than competent summary judgment evidence.

---

[7] Fifth Circuit cases do not consistently describe the standard for considering an issue raised for the first time on appeal. Some panels have stated that we need not address an issue for the first time on appeal "unless it is a purely legal issue *and* our refusal to consider it would result in a miscarriage of justice." *E.g., Heci Exploration Co. v. Holloway*, 862 F.2d 513, 518 & n.7 (5th Cir. 1988) (emphasis added). More recently, panels have explained that this court can consider an issue for the first time on appeal if "the issue presents a pure question of law *or* [is] an issue which, if ignored, would result in a miscarriage of justice." *E.g.*, *United States ex rel. Wallace v. Flintco, Inc.*, 143 F.3d 955, 971 (5th Cir. 1998) (emphasis added). We need not resolve this issue on the basis of waiver, and we do not express an opinion on whether Haargaard in fact waived her right to make this argument by failing to raise it in the district court.

---

[8] The blank for Harvey's vehicle damage is filled with "RD-5," plus an indecipherable four characters that might symbolize front or side damage. Because Procter's car later crashed into Harvey's from his right side, the officer would have to record damage from that accident. The summary judgment evidence strongly suggests that the indecipherable characters represent side, rather than front, damage.

Second, subsequent collisions could have caused damage to Smith's car after Harvey stopped short. For example, Juneman's car later hit Procter's car and caused it to crash into Harvey's. One of the three cars may well have traversed the one- or two-car length distance and caused damage to the rear of Smith's car. We can reconcile *all* available summary judgment evidence if Smith's car sustained the rear damage after the series of accidents. Haargaard's evidence fails to create a fact question about whether Harvey collided with Smith and led to the accidents.

Finally, even if Harvey's car physically collided with Smith's car, Haargaard fails to present evidence that the Shields/Smith accident caused that collision. She presents no evidence that the Smith/Shields accident somehow reduced Harvey's visibility. As explained above, both Smith and Shields crashed in occupied lanes, so they could not have cut off escape routes.

AFFIRMED.