**MILLENNIUM PETROCHEMICALS, INC. Plaintiff,**

v.

**BROWN & ROOT HOLDINGS, INC., et al. Defendants.**

No. CIV.A.H–01–3435.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 3, 2003.

Jose A. Berlanga, Gardere Wynne et al., Houston, TX, for Plaintiff.

David Lee Patterson, Godwin Gruber PC, Donald Everett Godwin, Godwin Gruber PC, Dallas, TX, Amy L. Donohue–Babiak, Gollatz Griffin et al., Philadelphia, PA, for Defendants.

### *ORDER*

HARMON, District Judge.

Pending before the Court in the above referenced contract dispute is Defendant Kellogg Brown & Root, Inc's Motion for Final Summary Judgment and Brief in Support thereof (Instrument No. 18) and Plaintiff Millennium Petrochemicals Inc.'s Amended Motion for Partial Summary Judgment and Application for Declaratory Judgment and Brief in Support thereof

(Instrument No. 19). Because Defendant's Counterclaim for Declaratory Judgment (Instrument No. 22) is the same as Defendant's Motion for Summary Judgment, it is addressed in the Court's discussion of Defendant's motion. After reviewing the pleadings, responses, and applicable law, the Court finds that Defendant's Motion for Final Summary Judgment (Instrument No. 18) should be **GRANTED** and Plaintiff's Motion for Partial Summary Judgment and Application for Declaratory Judgment should be **DENIED**.

## I. Introduction

During 1998, 1999, and 2000, various employees of Brown & Root (hereinafter, the "underlying plaintiffs") filed lawsuits against Millennium for asbestos-related injuries. These employees were allegedly exposed to asbestos while they worked for Brown & Root in an area owned by Millennium.[1] As a result of these lawsuits, on or about October 30, 2001, Millennium filed its Complaint for Declaratory Judgment against Brown & Root, seeking a declaration of indemnification under a contract that originated on January 1, 1961 (hereinafter "Agreement"). This Agreement was ultimately terminated by Millennium in 1995. During its existence, the Agreement has been subjected to numerous amendments and modifications, especially with regard to its indemnification provisions. The basis of Millennium's complaint is that Brown & Root refused to honor an indemnity clause in the Agreement as amended in 1973. In its motion for summary judgment, Brown & Root seeks a declaration from this court that it does not owe such a duty.

## II. Standard of Review

The movant seeking a federal summary judgment must initially inform the court of

the basis for its motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that it is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dickey v. Baptist Mem. Hosp.*, 146 F.3d 262, 264 (5th Cir.1998). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir.1987); *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir.1991).

The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which it bears the burden of proof at trial. *Fed. R.Civ.P. 56(c)*. The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. It meets this burden only if it shows that a "reasonable jury could return a verdict for the non-moving party." *Id.* at 254, 106 S.Ct. 2505. A mere scintilla of evidence will not preclude the granting of a motion for sum-

---

1. The Court has not been provided with any evidence showing the specific dates when the

underlying plaintiffs were exposed to asbestos on Millennium's property.

mary judgment. *Id.* at 252, 106 S.Ct. 2505.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), citing *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Once the burden of proof has shifted to the non-movant, it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Instead, it must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.,* 477 U.S. at 249–50, 106 S.Ct. 2505. Moreover the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.,* 139 F.3d 532, 536 (5th Cir.1998).

 Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Grimes v. Texas Dept. of Mental Health and Mental Retardation,* 102 F.3d 137, 139–40 (5th Cir.1996); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The non-movant cannot discharge its burden by offering vague allegations and legal conclusions. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## III. Factual Background

Plaintiff, Millennium Petrochemicals Inc. ("Millennium"), the successor in interest to National Distillers and Chemical Corporation ("NDCC") and Quantum Chemical Corporation ("Quantum"),[2] and the Defendant, Brown & Root Holdings, Inc. and its subsidiaries Brown & Root, Inc., Brown & Root USA and Brown & Root Industrial Services, Inc. (collectively, "Brown & Root") agree to the following facts. In January 1961, Millennium and Brown & Root[3] entered into an agreement ("Agreement") whereby Brown & Root "furnish[ed] labor and supervision needed for the performance of maintenance, construction, warehousing and shipping, and other related types of work at [Millennium's] Houston plant near Deer Park, Texas." ART. 1. SCOPE OF WORK.

The Agreement also provided under "*ARTICLE 17. LIABILITY*",[4] for cer-

---

**2.** It is undisputed that Millennium is the successor in interest to both NDCC and Quantum.

**3.** NDCC entered into the contract with Brown & Root, Inc. on or about January 1, 1961. Because neither party disputes that Millennium is the successor in interest to NDCC or that Brown & Root, Inc. is a subsidiary of Brown & Root Holdings, Inc., we refer to NDCC as Millennium and Brown & Root, Inc. as Brown & Root.

**4.** The indemnity provision provided: [Brown & Root's] liability hereunder shall not exceed that outlined in Exhibit "B," attached hereto, and incorporated herein. [Brown & Root] does not assume either directly or indirectly, care, custody, or control of [Millennium's] property beyond the limits of said insurance.

tain limitations on Brown & Root's liability by the incorporation of Exhibit "B" into the Agreement. Exhibit "B" set out the types, and sometimes the amounts of insurance Brown & Root agreed to obtain, including Workmen's Compensation, Employer's Liability, Comprehensive General Public Liability, and Comprehensive Automobile Liability, and provided:

[Brown & Root] shall indemnify and save harmless [Millennium] from all claims, suits, or actions and damages and costs of every name and description to which [Millennium] may be subjected by reason of injury to the person or property of another resulting from negligence or carelessness on the part of [Brown & Root], his employees, agents or subcontractors in the movement of equipment or supplies, or by or on account of any negligent act or omission of one of the [Brown & Root] employees, agents or subcontractors, if any.

Since 1961, this section has undergone two major changes.

The first amendment was a document entitled "*SECOND AMENDMENT TO CONTRACT*" and was first effective on January 1, 1973 (the "1973 Amendment"). The second amendment replaced Article 17 of the 1961 Agreement with new language under the title, "*ARTICLE 17. INDEMNITY AND LIABILITY.*" The new indemnity provision provided that:

[Brown & Root] shall indemnify and save harmless [Millennium] from all claims, suits or actions and damages and cost of every name and description to which [Millennium] may be subjected by reason of injury to the person of any employee of [Brown & Root] in any manner arising out of or incident to [Brown & Root's] performance of work hereunder or resulting from the presence on or about [Millennium's] premises of the agents, servants or employees of [Brown & Root], *even though such injury be caused in part by the negligence of [Millennium], its agents, servants or employees.* [Brown & Root] shall further indemnify and hold harmless [Millennium] from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from [Brown & Root's] performance of work undertaken hereunder, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Existing Facilities of [Millennium] or the Work itself), and (b) is caused in whole or in part by any negligent act or omission of [Brown & Root], any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by [Millennium].

[Brown & Root's] liability hereunder shall not exceed that outlined in Exhibit 'B', attached hereto, and incorporated herein or such other insurance as [Brown & Root] does not assume either directly or indirectly, care, custody or control of [Millennium's] property beyond the limits of said insurance. Except as hereinbefore specifically provided, said agreement dated the 1st day of January, 1961 and its first amendment dated February 1, 1965, shall remain in *full force and effect as originally written or as herein amended in writing.* (Emphasis added).

This 1973 Amendment is the basis for Millennium's claim of indemnity. According to Millennium, this language creates an obligation by Brown & Root to indemnify Millennium for its own negligence when the party claiming bodily injury is a Brown & Root employee.

The second major modification to this clause occurred on or about January 1, 1994 (the "1994 Amendment"). The 1994 Amendment deleted Article 17 of the Agreement as amended in its entirety and substituted new language under the title *"ARTICLE 17. INDEMNITY AND LIABILITY."* It provides, in relevant part, that:

> [Brown & Root] agrees to defend, indemnify and save harmless [Millennium], its officers, directors, agents and employees, against any and all claims, suits, damages, fines, penalties, orders, judgments, liabilities, loss and expense, including reasonable attorney's fees and other legal expenses, by reason of liability imposed or claimed. to be imposed upon [Millennium] arising out of or resulting from (a) bodily injuries, sickness or disease, including death, at any time resulting therefrom, sustained by any person whosoever including employees of [Millennium], [Brown & Root], their affiliates, subcontractors, and vendors, and third parties, or (b) damage to property (excluding the Work or any materials, supplies, or equipment hereunder to be incorporated into the Work and located at the plant), sustained by any person or persons to the extent arising out of or in consequence of [Brown & Root's], or [Brown & Root's] agents', employees', subcontractors' vendors' or affiliates' (i) negligent acts or omissions in the performance of or (ii) breach of this Agreement.

The 1994 Amendment, which is also the final amendment, provides that Brown & Root will indemnify Millennium only for the negligent acts of Brown & Root and deletes any language indicating that it would also indemnify Millennium for its own acts of negligence.

Pursuant to the Agreement, in a letter dated April 5, 1995, Millennium notified Brown & Root that it wished to terminate the agreement. Millennium did not reserve any rights under the terms of the notice letter and the Agreement was ultimately terminated on May 5, 1995. After the Agreement was terminated, Millennium was sued by former employees of Brown & Root, the underlying plaintiffs in this case. From 1998–2000, the underlying plaintiffs each alleged bodily injury as a result of asbestos exposure while employed by Brown & Root in performance of the Agreement at Millennium's Deer Park facility. Millennium was named as a premises defendant in these underlying lawsuits. In the underlying lawsuits, the number of plaintiffs in each suit ranges from 10 to 372 and the number of named defendants ranges from 41 to 110.

## IV. Discussion

Due to the interrelated nature of Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment, the Court will address both motions simultaneously. To resolve these motions, the Court must answer two crucial questions. The Court must first determine if the termination of the contract also terminated the Defendant's indemnification obligations to Plaintiff. If the termination of the contract does not terminate Brown & Root's indemnification obligation, the Court must then determine which amendment to the Agreement applies to this case.

### A. The termination of the Agreement also terminates Brown & Root's indemnification obligation.

Article 20 of the Agreement provides that "[t]his Contract may be terminated by either party within thirty (30) days after giving the other party written notice of termination." On April 5, 1995, Millennium provided to Brown & Root a written notice of termination, which be-

came effective on May 5, 1995 under the Agreement's termination clause. Millennium's termination notice did not contain any reservation of rights and there is no language in the Agreement that preserves Millennium's right to indemnification upon termination. Under Texas law, an indemnitor's contractual indemnity obligation terminates upon termination of the contract by its terms. *See Griffin Indus., Inc. v. Foodmaker, Inc.*, 22 S.W.3d 33, 36 (Tex.App.—Houston [14th Dist.], 2000 pet denied) (stating, "[u]nlike the mythical Phoenix, contracts that terminate by their express terms do not rise again.") The only rights under a contract that may survive are those that are based on prior performance. TEX. BUS. & COM. CODE ANN. § 2.106(c) (Vernon 1994) (" 'Termination' occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach. On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach of performance survives.") Because the Agreement was terminated according to its terms and there was no reservation of rights, the termination of the Agreement ended Brown & Root's obligation to Millennium.

**B. Assuming that the termination of the Agreement did not terminate Brown & Root's indemnity obligation, the 1994 Amendment is applicable; but, because it does not meet the express negligence rule, Plaintiff cannot recover.**

■ Millennium argues that because its right to indemnification is based on a prior breach of performance, the termination of the contract did not also terminate Brown & Root's obligation to Millennium. According to Millennium, its claim for indemnity is valid because the underlying plaintiffs were exposed to asbestos prior to the termination of the Agreement. Hence, Millennium's right to indemnification is "based on a prior breach of performance" and therefore survives under TEX. BUS. & COM. CODE ANN. § 2.106(c) (Vernon 1994).

Millennium, without providing any supporting law, heavily relies upon the notion that Texas has adopted an "exposure" theory for determining when an asbestos-related claim accrues. However, the date that the underlying plaintiffs were first exposed to asbestos is not relevant to this case. The Texas Supreme Court has clearly established that a cause of action for latent occupational diseases, such as asbestos, does not accrue "until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work related." *Childs v. Haussecker*, 974 S.W.2d 31, 33 (Tex.1998); *see also Pustejovsky v. Rapid–American*, 35 S.W.3d 643, 653 (Tex.2000). According to Millennium, the underlying plaintiffs claims for asbestos-related bodily injuries were first filed in 1998. Therefore, even after construing the facts in the light most favorable to the non-moving party, the earliest date in which the underlying plaintiff's asbestos related symptoms manifested themselves would be January 1, 1996 or they would be time-barred by the two-year statute of limitations for asbestos claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a)(Vernon 2001).

In addition, the Texas Supreme Court has clearly indicated that a "specific accrual rule applies for indemnification: an indemnity claim does not accrue until all of the potential liabilities of the indemnitee become fixed and certain." *Ingersoll–Rand Co.v. Valero Energy Corp.*, 997 S.W.2d 203, 210 (Tex.1999). To this date, it is uncertain if Millennium will be liable

to the underlying plaintiffs and the extent of that liability if so found. Since the Agreement has already been terminated, Millennium's indemnification claim against Brown & Root will automatically accrue after the termination of the Agreement.

■ Therefore, both the underlying plaintiffs claims against Millennium and Millennium's indemnity claims against Brown & Root have or will accrue after the Agreement was terminated. If these claims did not accrue after the termination of the Agreement, each would automatically be time-barred under the relevant statutes of limitations. In the present action, it is undisputed that the 1994 Amendment was adopted with the mutual consent and understanding of both Millennium and Brown & Root and that it was adopted for the express purpose of superceding all previous amendments to the Agreement's indemnity provisions. It is well established that a modified contract prevails over the old contract and supercedes the earlier contract to the extent of any inconsistencies. *Elson Thermoplastics v. Dynamic Systems, Inc.*, 49 S.W.3d 891, 898 (Tex. App.—Austin 2001, no pet.); *Cadle Co. v. Henderson*, 982 S.W.2d 543, 546 (Tex. App.—Austin 1998, no pet.) ("modified agreement takes the place of the original"); *Boudreax Civic Ass'n v. Cox*, 882 S.W.2d 543, 547–48 (Tex.App.—Houston [1st Dist.] 1994, no writ) ("modification to a contract creates a new contract that includes new modified provisions and the unchanged old provisions"); *Lake LBJ Mun. Utility Dist. v. Coulson*, 839 S.W.2d 880, 887 (Tex.App.—Austin 1992, no writ) ("terms of the latest contract control"); *Hall v. Professional Leasing Assocs.*, 550 S.W.2d 392, 394 (Tex.Civ.App.—Dallas 1977, no writ) ("earlier contract is superseded only to the extent of the inconsistency"). Hence, the prevailing amendment, if this contract is still enforceable, is the 1994 amendment.

■ Plaintiff's Motion for Partial Summary Judgment urges this Court to declare that the indemnity provisions in the 1973 Amendment are valid. According to the 1973 Amendment, Brown & Root must indemnify Millennium for its own negligence. "Because indemnifying a party for its own negligence is an extraordinary shifting of the risk, the Supreme Court has applied a fair notice requirement to indemnity agreements." *U.S. Rentals, Inc. v. Mundy Service Corp.*, 901 S.W.2d 789, 791 (Tex.App.—Houston [14th Dist.] 1995, writ denied). This fair notice requirement is also known as the express negligence rule and it requires the following:

1. A party's intent to be released from all liability caused by its own future negligence must be expressed in unambiguous terms within the four corners of the contract.

2. The indemnity clause must be "conspicuous" under the objective standard defined in the Uniform Commercial Code. A terms or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-negotiable Bill of Lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. *Griffin*, 22 S.W.3d at 37.

The 1994 amendment does not meet the express negligence rule. Instead, the amendment expressly indicates that it has deleted Brown & Root's obligation to indemnify Millennium for its own negligence. Brown & Root's Motion for Summary Judgment should therefore be granted because the termination of the Agreement also terminated Brown & Root's indemnity obligation to Millennium. But, even if the

640

indemnity obligation survived because it was based on a prior obligation, Millennium still would not be indemnified for its own negligence because the controlling 1994 amendment does not pass the express negligence rule. Therefore, the Court

**ORDERS** that Defendant Kellogg Brown & Root, Inc's Motion for Final Summary Judgment and Brief in Support thereof (Instrument No. 18) is **GRANTED**. The Court further

**ORDERS** that Plaintiff Millennium Petrochemicals Inc.'s Amended Motion for Partial Summary Judgment and Application for Declaratory Judgment and Brief in Support thereof (Instrument No. 19) is **DENIED**.

### *FINAL SUMMARY JUDGMENT*

Pursuant to the Memorandum and Order signed on this day, the Court orders that Defendant's MOTION FOR SUMMARY JUDGMENT is GRANTED and Plaintiff's MOTION FOR PARTIAL SUMMARY JUDGMENT AND APPLICATION FOR DECLARATORY JUDGMENT is DENIED on all causes of action in favor of Defendant Brown & Root Holdings, Inc., and against Plaintiff Millennium Petrochemicals, Inc. Plaintiff shall bear all costs of court.

THIS IS A FINAL JUDGMENT.